IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT K. DECKER,** | |
| Petitioner, | |
| v. | Case No. 23-CV-45-NJR |
| **DAN SPROUL,** | |
| Respondent. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Petitioner Robert K. Decker is a federal inmate housed at FCI Marion, a Bureau of Prisons facility located within the Southern District of Illinois. Decker filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his loss of 41 days of good conduct time, as well as the incident report imposed on his prison record, due to a prison disciplinary proceeding. (Docs. 1, 4). Decker sets forth two grounds for relief: (1) that he was denied the opportunity to call witnesses and present documentary evidence, and (2) that he was found guilty on insufficient evidence. (Docs. 1, 4). Respondent filed a response to the petition (Doc. 11), to which Decker replied (Doc. 14). For the reasons set forth below, the petition is denied.[1]

## BACKGROUND

Decker is serving a 140-month sentence imposed by the Southern District of Florida in 2017. (Doc. 11-1, at 7). His projected release date is August 2, 2027.[2] The

---

[1] Because this Court denies Decker's petition, Decker's Motion for Status (Doc. 19) is denied as moot.
[2] *See* www.bop.gov/inmateloc/ (last visited on Jan. 5, 2026).

incident at issue in this action took place at United States Penitentiary Terre Haute on February 3, 2021. (*See* Doc. 11-1, at 3; Doc. 11-1, at 160). An outgoing six-page letter written by Decker to his wife was received for review by the prison's Counter Terrorism Unit. (Doc. 11-3, at 13). At the time, he had yet to secure approval to send letters to his wife at her address. (Doc. 11-2, at 5; *see* Doc. 11-3, at 3).

The letter was reviewed by an intelligence analyst, who found that it included what she believed to be instructions for selling drugs on the internet without being detected. *Id.* She also reviewed a phone call between Decker and his wife. *Id.* In that phone call, Decker's wife stated that she is going to sell the house and "do something else with the money." *Id.* When Decker asked what she meant, reminding her that the call was being recorded, she said "[w]hat you went to jail for!" *Id.* Because Decker had been investigated for selling drugs online using similar mechanisms to those described in the letter, and in connection with the phone call, the analyst determined that Decker had "committed the prohibited act of use of mail for illegal purposes to further and aid his wife in the commission of a crime." *Id.* She wrote her findings in an incident report, thus beginning the disciplinary process. (Doc. 11-2, at 3; *see* Doc. 11-3, at 13).

Decker was served with the incident report on February 10, 2021.[3] (Doc. 11-2; at 3; Doc. 11-3, at 19). According to the investigatory official who served him, Decker acknowledged the truth of the incident report but stated "[h]ow can a letter leave the institution if the address is not on my approved mailing list." (Doc. 11-3, at 19). In light

---

[3] Technically, Decker was initially served on February 4, 2021. (Doc. 11-2, at 3; Doc. 11-3, at 21). However, the incident report was thereafter suspended for review until February 10, 2021. (Doc. 11-2, at 3).

of Decker's admission and a review of relevant materials, the official determined that the incident report was accurate and the charge against Decker was valid. *Id.*

The matter was then referred the Unit Discipline Committee (UDC). (Doc. 11-3, at 19; Doc. 11-2, at 4). In a statement to the UDC, Decker argued that his wife was "not even an approved contact" and that the contents of the letter are "all public information." (Doc. 11-3, at 13). The UDC decided to refer the matter to the Discipline Hearing Officer (DHO) for determination "[d]ue to the seriousness of the charge." *Id.* at 14.

Decker's initial DHO hearing (which is not at issue before this Court) was held on February 10, 2021. (Doc. 11-3, at 52–54). The DHO summarized Decker's testimony at the hearing as "[a]ll I was doing was showing her how to resell items from estate sales online." *Id.* at 52. The DHO found Decker had committed the charged infraction and sanctioned him. *Id.* at 52–54. Decker appealed this decision to the regional office, claiming (1) that he had requested a witness and a staff representative but was not provided either; (2) that he had not had his reading glasses at the UDC and therefore could not see what had been marked on the form; and (3) that he had not been given adequate time to prepare a defense, as the DHO hearing had been held five minutes after the UDC hearing. *Id.* at 10. The regional office determined that there had been a procedural error and remanded the matter for rehearing before the DHO. *Id.*

On May 25, 2021, Decker was advised of his rights at the upcoming rehearing, *id.* at 22, and given the opportunity to request in writing a staff representative and any witnesses he wished to call, *id.* at 23. He requested to call his case manager, Ms. Eisele, to testify that his wife's address was not on the approved contact list. *Id.* He did not request

any other witnesses. *Id.*

The DHO rehearing took place on August 11, 2021. *Id.* at 3. Decker called Ms. Eisele as a witness, and the DHO report does not indicate that he requested any other witnesses who were not made available. Decker was again found to have committed the charged violation. *Id.* at 3–5. To reach that conclusion, the DHO considered the incident report, Decker's disciplinary history, the letter, the phone call, Decker's prior statements acknowledging he had written the letter, and his statement at the rehearing contending that his wife's address had not been approved and that there was no proof he had written the letter. *Id.* at 4.

Decker appealed the DHO's determination on rehearing to the regional office. (Doc. 11-1, at 166). He complained that the intelligence analyst who had initially reported him should not have been reading his letter, as it would never have been sent to an unapproved address. *Id.* He contested the interpretations of his letter and phone call by prison officials and provided alternative explanations for their contents. *Id.* Finally, he argued that he could not have been guilty of the charged conduct—use of the mail for illegal purposes—because the letter in question would never have been sent in the mail to an unapproved address. *Id.*

The regional office affirmed the finding of the DHO.[4] *Id.* at 159. It interpreted Decker's appeal as challenging the merits of the DHO's determination; in response, the regional office affirmed that Decker had been provided due process during the

---

[4] Though it noted that the DHO report contained an administrative error and ordered an amended copy. (Doc. 11-1, at 159).

disciplinary procedure and that the DHO had based its determination on sufficient evidence. *Id.*

Decker then appealed the decision of the regional office to the central office. *Id.* at 148. He raised the same issues as before—namely, challenges to the merits of the DHO's finding of guilt. *Id.* The central office, too, interpreted this appeal as "contend[ing] [that he] did not commit the prohibited act" and treated it as a challenge to the sufficiency of the evidence relied upon by the DHO. *Id.* at 147. The central office then affirmed the decisions of the regional office and the DHO, stating that the DHO's determination had been "reasonable and supported by the evidence" and that Decker's "Due Process rights [had been] upheld during the discipline process." *Id.* Decker then filed this habeas petition.

## APPLICABLE LAW

Federal inmates must be given due process before their good time credit can be rescinded. *Brooks–Bey v. Smith,* 819 F.2d 178, 180 (7th Cir. 1987). Inmates can challenge the loss of good conduct credit through a petition for habeas relief pursuant to 28 U.S.C. § 2241. *Jones v. Cross*, 637 F.3d 841, 842 (7th Cir. 2011). Though there is no express exhaustion requirement in the statute, § 2241 petitions are subject to a common-law exhaustion rule. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004); *see also Vieth v. Williams*, No. 21-cv-170, 2021 WL 5177567, at *3 (S.D. Ill. Nov. 8, 2021) (citing *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004)) (noting the exceptions to the exhaustion requirement).

In a disciplinary hearing, inmates retain certain due process rights such as: (1) a

receipt of written notice of the charges in advance of the hearing; (2) an opportunity to be heard before an impartial decision maker; (3) the right to call witnesses and present evidence where the same will not be unduly hazardous to safety or correctional goals; and (4) a written statement as to the evidence relied on and the reason for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007). Along with these safeguards, due process requires that the findings of the DHO be supported by "some evidence from which the conclusion of the administrative tribunal could be deduced." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (quoting *United States ex rel. ajtauer v. Comm'r of Immigr.*, 273 U.S. 103, 106 (1927)); *see also Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). The "some evidence" standard is a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs*, 485 F.3d at 941 ("once the meager threshold has been crossed our inquiry ends"). A habeas court can overturn the decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d at 1077.

### DISCUSSION

Decker argues first that his procedural due process rights were violated when he was denied the opportunity to call his wife as a witness or present a copy of the letter at the rehearing before the DHO. (Doc. 4, at 4). Respondent asserts that this argument cannot be considered, however, because Decker failed to exhaust his administrative

remedies as to this ground for relief.[5] (Doc. 11, at 6–8).

To begin exhausting his administrative remedies, an inmate who wishes to challenge a decision of the DHO must first submit an appeal to the appropriate Regional Director. 28 C.F.R. §§ 542.14(d)(2), 542.15(a). If the inmate is not satisfied by the regional office's response, he may appeal again to the central office for a decision by the General Counsel. *Id.* § 542.15(a). At each level, the inmate's appeal must "state specifically the reason for appeal," and may not "raise . . . issues not raised in the lower level filings." *Id.* § 542.15(b)(1)–(2). The central office's determination exhausts the administrative remedy process. *Id.* § 542.15(a).

Decker did not raise at either level of administrative appeal the procedural due process issues asserted in his first ground for relief. (Doc. 11-3, at 6 (Decker's regional office appeal); Doc. 11-1, at 148 (Decker's central office appeal); *see also* Doc. 11-1, at 147 (decision of the central office, summarizing Decker's appeal as "contend[ing] [he] did not commit the prohibited act"). He did not mention any concerns about his wife's testimony or presenting a copy of the letter at the rehearing; instead, he argues only that the DHO was wrong to find him guilty. But Decker insists he exhausted his remedies. (Doc. 14, at5). He appears to base this contention on language in the decisions of the regional and central offices stating that his due process rights had been upheld. (Doc. 11-1, at 147 ("Our review of the disciplinary proceedings indicates . . . . [y]our Due Process rights were upheld during the discipline process."); Doc. 11-1, at 158 ("A review of the disciplinary

---

[5] Respondents concede that Decker exhausted his administrative remedies as to his second ground for relief (sufficiency of the evidence). (Doc. 11, at 7).

action indicated that you were provided due process . . . ."). The regional and central offices reached this conclusion without having before them any indication of objections to the process Decker had received other than to the sufficiency of the evidence against him.

The question, then, is whether Decker can satisfy the exhaustion requirement for this ground for relief—raised for the first time in his habeas petition—solely by pointing to administrative determinations that his procedural due process rights had been upheld in the context of a different issue. The undersigned finds that he cannot. The exhaustion requirement "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."[6] *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).[7] These purposes would be ill-served if one could thwart the requirement merely by omitting certain objections during the administrative appeal process—especially where that process requires the inmate to "state specifically the reason for [his] appeal" and forbids him from "rais[ing] in an [a]ppeal issues not raised in the lower level filings." 28 C.F.R. § 542.15(b)(1)–(2). A final administrative rejection of the claims an inmate raises should

---

[6] The first of these purposes "acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion promotes the second purpose, judicial efficiency, in at least two ways: (1) "a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided," when an agency gets the chance to correct its own errors; and (2) "even where a controversy survives administrative review, exhaustion of the administrative procedure *may produce a useful record for subsequent judicial consideration*" by giving the agency an opportunity to compile a record sufficient for judicial review. *Id.* (emphasis added) (citations omitted).

[7] "*McCarthy* has been superseded by statute to the extent it held that federal prisoners seeking monetary damages in a *Bivens* action are not required under 42 U.S.C. § 1997e to exhaust administrative remedies provided by the Bureau of Prisons. However, *McCarthy*'s principle that when exhaustion is not statutorily mandated, 'sound judicial discretion governs' remains good law, as does its further admonitions on how that discretion should be utilized." *Gonzalez*, 355 F.3d at 1016 n.5 (quoting *McCarthy*, 503 U.S. at 144) (first citing *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998); and then citing *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570–73 (5th Cir. 2001)) (cleaned up).

not be considered a final disposition of the claims he hasn't raised at all.

Here, where Decker did not raise the issues of access to the letter or his wife's testimony in any of his appeals, he failed to exhaust his administrative remedies as to his first ground for relief.[8] Though the exhaustion requirement in § 2241 cases is not absolute, *e.g. Vieth*, 2021 WL 5177567, at *3, Decker fails to argue that any recognized exception is applicable here. The first ground for Decker's petition, therefore, is denied for failure to exhaust.[9]

In Decker's second ground for relief, he argues his due process rights were violated when he was found to have committed the alleged violation on insufficient evidence. (Doc. 4, at 5). Due process, in a prison disciplinary hearing, only requires "that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. The relevant question under this standard is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 456-57. The Court cannot "assess the comparative weight of the evidence

---

[8] The record supports the conclusion that these issues were not considered (or, therefore, exhausted) by the regional and central offices. The record includes a copy of the form Decker was required to fill out, sign, and return to the DHO before his rehearing. (Doc. 11-3, at 23 ("Notice of Discipline Hearing Before the DHO")). On the form, Decker noted that he wished to call witnesses and provided a list of those he planned to call. *Id.* Decker only wrote that he wished to call Ms. Eisele to testify—not his wife or anyone else. *Id.* Ms. Eisele attended the rehearing and testified as requested. *Id.* at 3. And, again, Decker's administrative appeals from the rehearing do not mention any allegation (1) that he had been prevented from calling his wife to testify, or (2) that he asked for, did not receive, or was not permitted to present a copy of the letter at issue. (Doc. 11-3, at 6; Doc. 11-1, at 148). Thus, even to the extent that the regional and central offices considered the question of procedural due process, the record before them would not have disclosed the existence of the objections animating Decker's first ground for relief in this petition.

[9] In his reply to Respondent's brief, Decker for the first time asserts another alleged procedural violation: that the initial UDC hearing was conducted by only one person instead of two. (Doc. 14, at 3–4). Even assuming that the issue is properly before this Court, it too is absent from Decker's administrative appeals. (Doc. 11-3, at 6; Doc. 11-1, at 148). This ostensible ground for relief is therefore similarly denied for failure to exhaust.

underlying the disciplinary board's decision." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). The "some evidence" standard is satisfied as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.

Decker asserts that the DHO did not have sufficient evidence to find him guilty of violating Code 196, which prohibits "[u]se of the mail for an illegal purpose." 28 C.F.R. § 541.3, tbl. 1. But much of Decker's argumentation (both during his administrative appeals and before this Court) focuses on the fact that he was not permitted to send mail to his wife at the time in question. (Doc. 11-3, at 6; Doc. 11-1, at 148; Doc. 1, ¶ 2; Doc. 4, at 5). Decker appears to argue that, because the prison would never have allowed the letter to be sent, it was not physically possible for him to "use" the mail; consequently, he could not have violated Code 196. This argument is not truly a challenge to the sufficiency of the evidence against him. It is instead a claim that the alleged conduct, even if sufficiently evidenced, does not fit the legal definition of the prohibited act.

As a matter of law, Decker is wrong. The regulation defining Code 196 as a prohibited act also explicitly states that "[a]iding, *attempting*, or making plans to commit any of the prohibited acts is treated the same as committing the act itself." 28 C.F.R. § 541.3(a) (emphasis added). Thus, Decker need not have *succeeded* in using the mail system for an illegal purpose to have committed a violation—he need only have *attempted* to do so. That it was factually impossible for him to succeed does not mean Decker cannot be held liable for the attempt. *See, e.g.*, *United States v. Cote*, 504 F..3d 682, 687 (7th Cir. 2007). Consequently, Decker has no basis on which to challenge the legal

sufficiency of the DHO's determination.

Returning to the question of the sufficiency of the evidence, Decker's claim fails because there was "some evidence" to support the finding of guilt. At the rehearing, the DHO relied on the report of the officer who reviewed Decker's phone call and letter; Decker's disciplinary history; the phone call log and the written letter, which corroborated the reporting officer's report; Decker's prior statements to the investigating lieutenant, the UDC, and the DHO at the initial hearing; and Decker's rehearing testimony. (Doc. 11-3, at 4–5).

The letter and the phone call are reasonably read to refer to criminal activity—specifically, it is natural to read them as giving his wife instruction on how to sell contraband on the internet. Decker instructed his wife to use virtual private networks and data encryption programs to browse the web privately (Doc. 11-3, at 13 (officer report describing the letter); Doc. 14, at 7–13 (copy of the letter)), and told her to "[b]uy some things online to sell too like I used to do, O.K.? Buy small [at] first until you know it's good, O.K. Look for other sites to sell on too O.K. That way you can expand your customer's [sic]." (Doc. 14, at 12). This evidence, from which the DHO inferred an intention to further the commission of crimes similar to those for which Decker had been originally convicted, is more than sufficient to meet the "meager threshold" required in this context. *Scruggs*, 485 F.3d at 941.

Decker's arguments to the contrary are unavailing. He makes two principal contentions: first, he claims there was no proof he had written the letter in question (Doc. 1, ¶ 3); and second, he argues there is no evidence that he was attempting to engage

in criminal activity, because he never explicitly referred to illegal matters in the phone call or letter. (Doc. 1, ¶¶ 4–5; Doc. 4, at 5; Doc. 14, at 2, 5). These arguments are ultimately futile because this Court's only role is to determine whether some evidence supports the conclusion by the DHO—not to rehash individual substantive arguments from the disciplinary rehearing. Even if the Court could consider Decker's arguments, however, they are without merit.

First, the DHO based its finding at rehearing that Decker had written the letter on his admission at the initial hearing that he had done so. (Doc. 11-3, at 4–5). An admission by Decker himself easily clears the "meager threshold" required to support the finding that Decker had written the letter. *Scruggs*, 485 F.3d at 941.

Second, Decker argues that there is no evidence of criminal activity because each of the statements in the letter and the phone call have innocuous explanations. (Doc. 1, ¶¶ 4–5 ("It does not state anywhere in the letter the following as alleged, Drugs, Darkweb, Bitcoins, or anything that was illegal. . . . [the reporting officer] inferred that what I was allegedly attempting to do was instruct my wife in illegal activities, but all in all I was explaining to my wife on how to be safe on the internet in totality."); Doc. 14, at 2, 5 (explaining that the allegedly inculpatory portions of the phone call and letter referred to legal activities rather than illegal activities, as inferred by the DHO)).

This argument is similarly futile, because the question before this Court is not whether the DHO's reading of Decker's letter is the only plausible reading, or even the most plausible. The Court finds that it was reasonable for the DHO to infer, based on the phone call where Decker's wife referred to "what [he] went to jail for," (Doc. 11-3, at 4),

that the phone call and subsequent letter were referring to illegal activity.

Ultimately, the DHO's conclusion that the letter was an attempt to use the mail system for an illegal purpose was clearly based on some evidence. The DHO read the letter and, in the context of the previous phone call with his wife, concluded that the letter was explaining to his wife how to use virtual private network and data encryption services to conduct illegal activities online without getting caught. That there may be alternative explanations for Decker's words is irrelevant when the only question is whether the DHO based its conclusion on "some evidence." Because this Court cannot say that "no reasonable adjudicator could have found [Decker] guilty of the offense on the basis of the evidence presented," *Henderson*, 13 F.3d at 1077, Decker's petition must be denied.

## Conclusion

For these reasons, the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Robert K. Decker (Doc. 1) is **DENIED**. Decker's Motion for Status (Doc. 19) is **DENIED as moot**.

If Decker wishes to appeal this Order, he must file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B). If Decker chooses to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). If Decker files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

It is not necessary for Decker to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

This entire action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   January 6, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**